# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| PLATINUM SUPPLEMENTAL INSURANCE, INC., | ) ) ) | Case No. 17-cv-8872 |
| Plaintiff, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| GUARANTEE TRUST LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |
| GUARANTEE TRUST LIFE INSURANCE COMPANY, | ) ) ) | Case No. 18-cv-3109 |
| Third-Party Plaintiff, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) | |
| PLATINUM SUPPLEMENTAL INSURANCE, INC., | ) ) ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff's motion for summary judgment [68] on both counts of its complaint and Defendant's outstanding claims against it. For the reasons set forth below, the Court grants the motion [68] and will enter judgment in favor of Plaintiff Platinum and against Defendant GTL on Counts I and II in Case No. 17-cv-8872, as well as on the claims for indemnification and contribution asserted by GTL against Platinum in Case No. 18-cv-3109, which was transferred to this district from the Eastern District of Missouri in May 2018 and reassigned to this Court as a related case in July 2018 [see 31]. Civil Case Nos. 17-cv-8872 and 18-cv-3109 are thus terminated.

## I. Background

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits: [51], [76], [77], and [85–91]. The Court construes the facts in the light most favorable to the nonmoving party—here, the Defendant. The following facts are undisputed unless otherwise noted. "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." *King v. Chapman*, 2013 WL 6709623, at *3 (N.D. Ill. Dec. 16, 2013). The Court has already found that it has jurisdiction over this case. See generally [38].

This case arises out of a long-standing and multi-faceted dispute between the parties. Plaintiff Platinum Supplemental Insurance ("Platinum") marketed and sold insurance policies underwritten by Defendant Guaranteed Trust Life Insurance ("GTL"). *E.g.* [51, ¶ 1]. In 2002, GTL and Platinum executed a marketing agreement ("Marketing Agreement"), whereby Platinum and its agents agreed to sell policies underwritten by GTL. See generally [85]; see also [51, ¶ 1]; [76, ¶ 1]. The Marketing Agreement included an indemnification provision that "Platinum shall hold GTL * * * harmless against any damages, liabilities, claims, charges, attorneys' fees, or other costs arising from or in connection with any claim, action or proceeding relating to or arising from any act or omission or any negligent or intentional misconduct by Platinum, relating to the subject matter of this Agreement or failure to comply with the terms of this Agreement or any applicable law, rule, or regulation." [85, ¶ 15(b).] The Marketing Agreement also required Platinum to obtain written approval from GTL for the use of any marketing materials and incorporated GTL's Advertising Policy and Code of Ethical Market Conduct by reference. [*Id.*, ¶ 14.] Finally,

Platinum was responsible for conforming its employees' and contractors' conduct to the terms of the Marketing Agreement. [*Id.*, ¶ 6.]

The business relationships between Platinum and GTL began to unravel when both parties were sued by Michael Casper, who had purchased a GTL policy from a Platinum marketer. [51-2, ¶ 40.] He brought various claims against both GTL and Platinum. [*Id.*, ¶¶ 42, 45–46.] Casper's claim against GTL went to trial, where it was revealed that Platinum used certain aggressive marketing tactics and used marketing materials that were not pre-approved by GTL. [*Id.*, ¶¶48–49, 51–53.] GTL believed that several of these practices violated the Marketing Agreement. GTL contended that Platinum failed to run training materials by GTL and to ensure that its agents engaged in competent and ethical behavior. [*Id.*, ¶¶ 58–61.]

By May 2015, GTL informed Platinum that it wanted out of the Marketing Agreement. See [87, ¶ D]. The parties settled some of their outstanding disputes relating to termination of the Marketing Agreement in July 2015. See generally [*id.*] (the "2015 Settlement Agreement"). But the 2015 Settlement Agreement includes a section entitled "Excluded Matters," which included "such claims, if any, as GTL may have against Platinum stemming from the judgement entered in the matter of Michael D. Casper * * * [and] [s]uch indemnification rights as GTL may have, if any, arising out of existing and future claims as may from time to time be asserted against GTL attributable to the conduct of Platinum agents, brokers and representatives in connection with the offering and sale of insurance policies." [*Id.*, ¶ 10.][1]

---

[1] Another element of the 2015 Settlement Agreement concerned the extent to which Platinum or GTL could approach the other party's clients and attempt to induce them to switch coverage. See [*Id.*, ¶ 6]. This practice, apparently called twisting, later became a point of contention between the parties. See [88, ¶¶ 6–11]. Twisting is not at issue in the instant litigation. Although GTL argues that the Cook County Action was solely about twisting, those assertions are unsupported by citations to the record and are, in any event, inaccurate. Compare [75 at 2] ("This is because the Circuit Court of Cook County [sic: Action], and the dismissal entered therein, was about 'twisting' by Platinum on a national scale"), with [51-2, ¶¶ 81–149]

On December 11, 2015, GTL filed suit against Platinum and its president in Cook County Circuit Court (the "Cook County Action") alleging, *inter alia*, that Platinum breached the Marketing Agreement by failing to adequately train and supervise its agents. See generally [51-2]. According to the complaint, "Platinum recklessly disregarded that its supervision, management and training of its employees and the [contractors] created the risk that applications would not be solicited and procured in compliance with all applicable local, state and federal laws and regulations and/or any rules and requirements established by GTL" and the fact that "its employees and [contractors] were soliciting and procuring applications in a manner that exposed GTL to claims similar to those made in the Casper Lawsuit." [51-2. ¶¶ 65, 67.]

Specifically, the breach of contract claim alleged that the Marketing Agreement required Platinum to "ensure that its employees and [contractors] solicited and procured applications in compliance with all applicable local, state and federal laws and regulations and any rules and requirements established by GTL." [*Id.*, ¶ 100.] According to GTL, however, Platinum "fail[ed] to ensure that its employees" did so, exposing GTL to legal liability. [*Id.*, ¶ 101.] Such liability included the damages and litigation costs associated with the Casper lawsuit, as well as other "claims similar to those made in the Casper Lawsuit." [*Id.*, ¶¶ 102–03, 101]; see also [*id.*, ¶¶ 57, 61–62, 65, 67, 69, 92–93] (repeatedly explaining that Platinum's alleged conduct opened GTL up to myriad potential suits similar to Casper's). GTL alleged additional harms in the form of "compensation and commission to Platinum for services that it was obligated to, but did not provide; i.e., the solicitation and procurement of applications in compliance with all applicable local, state and federal laws and regulations and any rules and requirements established by GTL."

---

(bringing seven counts against Platinum and its president, none of which mention twisting); [88, ¶¶ 1-4] (demanding non-twisting related relief in arbitration).

4

[*Id.*, ¶ 104.] According to GTL, it "paid Platinum compensation and commissions in excess of $226 million" over the years when the Marketing Agreement was in effect. [*Id.*, ¶ 23.]

Pursuant to the Marketing Agreement, the claims against Platinum were sent to arbitration, while the claims against Platinum's president were stayed pending resolution of the arbitration. See generally *Guarantee Trust Life Insurance Company v. Platinum Supplemental Insurance, Inc.*, 68 N.E.3d 481 (Ill. App. Ct. 2016). While the parties were arbitrating the dispute, GTL amended its arbitration demand to include claims related to the breach of the 2015 Settlement Agreement [88, ¶¶ 5–15], and Platinum counter-claimed, contending (among other things) that GTL withheld commissions, defamed Platinum, and attempted to interfere with Platinum's relationships with its customers. [89 at 14–27.]

GTL and Platinum settled their arbitral dispute and the Cook County Action on February 28, 2017, memorializing their agreement in a written settlement agreement (the "2017 Settlement Agreement"). See generally [90]. The 2017 Settlement Agreement provided that (unless otherwise noted) the 2015 Settlement Agreement should remain in force. [90, ¶ 11]. Importantly, the 2017 Settlement Agreement also included a provision that the "Parties agree that section 10 of [2015 Settlement Agreement] is hereby terminated and of no further force and effect"—that is, the parties terminated the "Excluded Matters" section, which carved out the various indemnification claims from the earlier settlement. The 2017 Settlement Agreement also contained a provision that "all claims that were filed or could have been filed in the Cook County Litigation shall be deemed to be settled and resolved by this AGREEMENT." [90, ¶ 2.] After the 2017 Settlement Agreement was executed, the Cook County Circuit Court entered an order of dismissal, stating: "All claims in the above-captioned case are dismissed with prejudice as to all Defendants" and

5

"[t]he parties agree that all claims that were filed or could have been filed in the Cook County litigation shall be deemed settled and resolved." [51-1, ¶¶ 1–2.]

Meanwhile, yet another suit related to Platinum's marketing of GTL's policies was brewing. Thomas Grisham filed a complaint against GTL in the United States District Court for the Eastern District of Missouri (the "Missouri Action") claiming that GTL incorrectly refused to provide coverage for his insurance claim under a policy sold by Platinum and underwritten by GTL, vexatiously refused to pay, and defamed him. See generally [51-4]. The Missouri Action was filed on December 8, 2016 (that is, two and a half months before the 2017 Settlement Agreement was signed). *Id.* GTL, in turn, filed a third-party complaint against Platinum in the Missouri Action in October 2017. [5-3 at 1–7.] GTL alleged that if it were found liable to Grisham, Platinum would owe indemnification and contribution to GTL because Grisham's suit arose from Platinum's alleged breach of the Marketing Agreement. [*Id.*, ¶ 14.] Specifically, the breach in question resulted from Platinum's alleged failure to ensure its employees' compliance "with all local, state, and federal laws and regulations, * * * all rules, guidelines, and requirements established by GTL," and "GTL's company procedures and rules concerning advertising policies, marketing guidelines, and GTL's code of ethical market conduct." [*Id.*, ¶¶7–8.]

In response, Platinum filed the instant action against GTL, seeking a declaration that the 2017 Settlement Agreement and accompanying Circuit Court order barred GTL's cross-claim in the Missouri Action, and damages for GTL's alleged breach of the Settlement Agreements. See generally [1]. GTL's Missouri indemnification claim was then transferred to the Northern District of Illinois and consolidated with this case. [31.] The Court has already determined that it has subject matter jurisdiction and that abstention would be inappropriate. See generally [38]. At a status hearing held on February 5, 2019, the parties confirmed that while the case was still pending

6

in Missouri, the underlying claim between the original plaintiff (Grisham) and GTL was settled, leaving only the third-party claim brought by GTL against Platinum pending. And, counsel explained, that claim presents the "flip side" of the threshold issue in this case, which the parties agreed to present through the briefing on the motion now before the Court, after engaging in a period of discovery which concluded by late June or early July [see 55. 66 (joint status reports on discovery)].

In Platinum's motion [68], it seeks summary judgment on both counts in its complaint—declaratory judgment that the 2017 Settlement Agreement barred GTL's cross claim in the Missouri action (Count 1) and damages for breach of contract (Count 2). It also seeks summary judgment on GTL's related indemnification and contribution claims from the Missouri Action.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, GTL). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But Defendant "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th

Cir. 2017) (citation and quotation marks omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

**III.    Analysis**

Platinum seeks dismissal on three related theories. First, Platinum argues that the 2017 Settlement Agreement contractually bars GTL from litigating this case, and that the Missouri third-

party complaint was accordingly a breach of contract. Second, Platinum argues that final judgment in the Cook County Action precludes any of GTL's claims, entitling it to declaratory relief and summary judgment on the indemnification claims. Finally, Platinum argues that the issue of indemnification for contractual breach was precluded as well.

### A. Settlement Agreement

"[A] settlement agreement is considered a contract, and construction and enforcement of settlement agreements are governed by principles of contract law." *Cannon v. Burge*, 752 F.3d 1079, 1088 (7th Cir. 2014) (summarizing *Cushing v. Greyhound Lines, Inc.*, 991 N.E.2d 28, 92 (Ill. App. Ct. 2013)).[2] Likewise, releases within settlement agreements are governed by contract law. *Id.* (citing *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill.2d 440, 447 (1991); *Rakowski v. Lucente*, 104 Ill.2d 317, 323 (1984)). "Where a written agreement is clear and explicit, a court must enforce the agreement as written. Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Rakowski*, 104 Ill.2d at 323; see also *Cannon*, 752 F.3d at 1088 (collecting cases).[3] "In contrast, when a contract is ambiguous, construction of the agreement is a question of fact, and the finder of fact may consider parol evidence in determining the intent of the parties." *Cannon*, 752 F.3d at 1088 (citing *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill.2d

---

[2] By its own terms, Illinois contract law applies to the 2017 Settlement Agreement. [90, ¶ 12.]

[3] GTL argues that releases should be interpreted considering both the language in the agreement *and* the circumstances of the transaction. See [75 at 6]. But the Seventh Circuit has explained that Illinois courts generally look only to the four corners of the document, and that the circumstances of a transaction are only relevant if one party alleges fraud. See *Cannon*, 752 F.3d at 1088–89; see also *Daniels v. Rivers*, 2014 WL 6910492, *5 n.3 (N.D. Ill. Dec. 9, 2014) (St. Eve, J.) (refusing to consider circumstances surrounding signing release in a settlement agreement). Although GTL has cited a handful of Illinois Appellate Court cases that considered extrinsic evidence absent allegations of fraud, none are more recent than 1990, and they run contrary to more recent Illinois Supreme Court decisions, which consistently hold that "when a contract is unambiguous on its face, the intent of the parties must be construed without consideration of parol evidence." *Cannon*, 752 F.3d at 1091 (citations omitted).

9

440, 447 (1991)). Regardless, "a contract must be construed as a whole, viewing each part in light of the others." *Gallagher v. Lenart*, 226 Ill.2d 208, 233 (2007).

The release in the 2017 Settlement Agreement is unambiguous: "The Parties agree that all claims that were filed or could have been filed in the Cook County litigation shall be deemed to be settled and resolved by this AGREEMENT." Under the release language, the dispositive issue turns on whether the claims at issue were or could have been filed in the Cook County Action.

The Cook County complaint included an extremely broad breach of contract claim against Platinum: "Platinum materially breached its contractual obligations under the Marketing Agreement by failing to ensure that its employees and the [contractors] solicited and procured applications in accordance GTL's Advertising Policy and Code of Ethical Market Conduct so as to avoid exposing GTL to claims similar to those made in the Casper Lawsuit." [51-2, ¶ 101.] This claim broadly covers Platinum's alleged failure to supervise its employees and contractors and ensure adherence to the terms of the Marketing Agreement, including the requirement that Platinum's agents adhere to the Advertising and Ethical Market Conduct policies. See [85, ¶¶ 6, 14–15]. These policies, in turn, emphasize that insurance marketers must be "honest and fair", should not "mislead or deceive", maintain "honesty, fairness, and integrity"; "engage in fair competition"; and engage in "good faith and fair dealing." [51-3 at 37–38.] The factual recitals in the complaint concern Platinum's alleged failure to conform its agents' behavior to these guidelines. *E.g.* [51-2, ¶¶ 65, 67].

This broad theory of liability is almost identical to the breach of contract claim brought in the Missouri Action. In that litigation, GTL recites that Platinum is responsible for its agents' "compliance with all local, state, and federal laws and regulations" and that Platinum agreed it would "cause its agents to comply with all of GTL's company procedures and rules concerning

10

advertising policies, marketing guidelines, and GTL's code of ethical market conduct." [51-3, ¶¶ 7–8.] GTL seeks indemnification because Platinum agents made "certain negligent misrepresentations concerning [Grisham's] answers to an insurance policy application"; Platinum negligently "supervising and monitoring its agents in the marketing and selling of insurance policies"; and Platinum and/or its agents made "intentional actions or omissions in the solicitation and procurement of the insurance policy application of [Grisham]." [*Id*., ¶ 14.] GTL concedes that the Missouri Action boils to down Grisham's "claims that he was sold a policy that did not provide the coverage he expected"—an allegation that cuts to the core of Platinum's policies that were at issue in both the Casper litigation and the Cook County Action. See [75 at 2]; [51-2, ¶¶ 51–53].

In other words, in both cases the theory of indemnification and Platinum's liability boils down to its allegedly negligent training and supervision, contravening certain GTL policies incorporated by reference into the Marketing Agreement. By the terms of the 2017 Settlement of the Cook County Action, Platinum already has settled claims relating to its failures to ensure that its employees behaved honestly and fairly and engaged in fair competition.

Furthermore, even if the Court were to consider the release language in the 2017 Settlement Agreement ambiguous in regard to whether indemnification claims related to breach of contract were settled, the surrounding context clearly indicates the parties' intent that their global settlement preclude future litigation regarding this breach of contract theory. Section 10 of 2017 Settlement Agreement terminates § 10 of 2015 Settlement Agreement, which read, in relevant part:

> EXCLUDED MATTERS. The parties acknowledge that there are certain pending matters that are not intended to be encompassed by this Settlement Agreement and are hereby expressly excluded herefrom (the "Excluded Matters"). The Excluded Matters are: * * *
>
> (b) such indemnification rights as GTL may have, if any, arising out of existing and future claims as may from time to time be asserted against GTL attributable to the

11

conduct of Platinum agents, brokers and representatives in connection with the offering and sale of insurance policies.

[87 at 6.] In other words, the original 2015 Settlement Agreement expressly acknowledged and contemplated the fact that future litigation may arise from Platinum's alleged breach of contract; the Cook County complaint acted on this possibility; and the final 2017 Settlement Agreement terminated both this exception and the Cook County Action. These circumstances inexorably lead to the conclusion that the 2017 Settlement Agreement reflects the bargained-for compromise regarding GTL's indemnification rights pursuant to its breach-of-contract claims as asserted in both the Cook County Action and here.

Finally, GTL commenced the Missouri Action more than two months before the settlement agreement was signed. GTL was (or should have been) aware of this claim stemming from Platinum's alleged breach when it settled its broad breach of contract claim. Especially given that the 2017 Settlement Agreement removed the exclusion for indemnification claims, GTL cannot plausibly argue that the settlement did not apply to outstanding claims of which it was aware.

GTL has not pointed to any language in either of the Settlement Agreements that contradicts any of these conclusions, and therefore summary judgment is warranted on all counts. That is, the 2017 Settlement Agreement foreclosed GTL's indemnity and contribution claims in the Missouri Action, and its attempts to relitigate this claim contravene the express terms of the 2017 Settlement Agreement.

### B. Claim preclusion (res judicata)

Claim preclusion, also called *res judicata*, prevents litigants from bringing multiple, successive lawsuits based on the same underlying cause of action. "The doctrine of *res judicata* provides that [1a] a final judgment on the merits [1b] rendered by a court of competent jurisdiction bars any subsequent actions [2] between the same parties or their privies [3] on the same cause of

12

action." *Hudson v. City of Chicago*, 228 Ill.2d 462, 467 (2008) (quoting *Rein v. David A. Noyes & Co.*, 172 Ill.2d 325, 334 (1996)).[4] Platinum urges this theory as an alternative ground for granting summary judgment on its declaratory judgment claim and on GTL's indemnification and contribution claims.

Platinum argues that the Circuit Court's order dismissing the Cook County Action was a final judgment on the merits. GTL counters that stipulated dismissals cannot have preclusive effect. The parties also dispute whether the Cook County Circuit Court had jurisdiction to enter the notice of dismissal. Platinum further argues that the Cook County Action and Missouri claims are identical breach of contract claims. GTL responds that they are based on different underlying deficiencies in Platinum's performance. Plaintiff also submits, in the alternative, that even if the breach of contract claims are not identical, the claims related to Grisham could have been brought before the Cook County Action was settled. There is no dispute that the parties are identical.

### 1. Final judgment by a court of competent jurisdiction

There is a split of Illinois authority concerning the extent to which a stipulated dismissal pursuant to settlement operates as a "final judgment on the merits" and precludes future claims. GTL cites *Goodman v. Hanson*, 408 Ill.App.3d 285 (1st Dist. 2011), which reasoned that "an agreed order is not a judicial determination of the parties' rights, but rather is a recordation of the agreement between the parties." *Id.* at 300 (internal quotation marks and citation omitted). But there are numerous other cases that consider a dismissal pursuant to settlement to be a final judgment on the merits, and a "review of Illinois case law suggests that *Goodman* is contrary to prevailing authority." *Fox v. Will County*, 2012 WL 2129393, *3–4 (N.D. Ill. June 8, 2012)

---

[4] "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) (citing *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)).

(reviewing cases); see also *Goodman*, 408 Ill.App.3d at 300 (acknowledging split). In fact, several state and federal courts have concluded that under Illinois law, dismissals pursuant to settlement constitute final judgments on the merits that can preclude future claims. *E.g.*, *Fox*, 2012 WL 2129393 at *4; *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000); *Nelson v. Chicago Park Dist.*, 408 Ill.App.3d 53, 61 (1st Dist. 2011); *Jackson v. Callan Pub., Inc.*, 356 Ill.App.3d 326, 340 (1st Dist. 2005) ("The modern view generally recognizes that a valid consent judgment is entitled to a res judicata effect, so as to preclude relitigation of the same claim or cause of action as was covered by such judgment."); *SDS Partners, Inc. v. Cramer*, 305 Ill.App.3d 893, 896 (4th Dist. 1999). This Court adopts the latter, modern view, pursuant to which the order dismissing the Cook County Action in March 2017 operates as a final judgment on the merits that precludes this litigation if the other elements of *res judicata* are met.

GTL also argues that the Cook County Circuit Court "lost jurisdiction over Platinum and GTL's claims against Platinum[]" after Platinum moved to dismiss the suit and compel arbitration. [75, § IV(E).] But GTL fails to cite any authority for the proposition that Illinois state courts lack jurisdiction over breach of contract claims potentially subject to arbitration, or cannot issue court orders pertaining to arbitral awards. Instead GTL discusses a case where the first adjudicatory body lacked authority to decide the class of claims at issue, and therefore its judgment could not be entitled to preclusive effect. See [*id.* at 12 (citing *Terry v. Watts Copy Systems, Inc.*, 329 Ill.App.3d 382, 388 (4th Dist. 2002) (finding that Illinois Human Rights Commission's denial of workers' compensation had no preclusive effect because the Commission does not have jurisdiction over workers' compensation claims)]. If GTL's argument for an extension of *Terry* is correct, that would mean that the Circuit Court's order and those like it are nullities, but the Court is loath to draw such sweeping inferences from tangential cases.

This approach also flies in the face of traditional understandings of jurisdiction. For example, the federal circuits agree that motions to dismiss in favor of arbitration should be "conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3), or as a failure to state a claim, and thus properly raised under Rule 12(b)(6)"—not as a Rule 12(b)(1) objection to jurisdiction. See *Automobile Mechanics Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 746 (7th Cir. 2007) (citing 5B Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure* § 1352 at 318–19 (3d ed. 2004)). Likewise, the right to an arbitral forum can be waived, whereas jurisdiction cannot. Compare *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) ("A contractual right to arbitrate may be waived expressly or implicitly."), with, *e.g.*, *Napoleon Hardwoods, Inc. v. Professionally Designed Benefits, Inc.*, 984 F.2d 821, 822 (7th Cir. 1993) (citing *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 381 (1884) for the proposition that "jurisdiction cannot be waived"). Because GTL has not cited any countervailing authority, the Court concludes that the Circuit Court had jurisdiction when it entered the order dismissing the action.

2. **Identity in cause of action**

Neither party cites Illinois case law regarding the test for identity of causes of action. However, the Seventh Circuit has explained that:

> Illinois uses a transactional test to decide what counts as the same cause of action. According to that test, 'separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.... [T]he transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction.'

*Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079–80 (7th Cir. 2011) (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 310 (1998)). Thus, *res judicata* "extends not only to what was actually decided in the original action, but also

15

to matters which could have been decided in that suit." *Rein v. David A. Noyes & Co.*, 172 Ill.2d 325, 335–36 (1998).

The original Cook County Action included a claim for Platinum's breach of contract alleging a failing to adhere to or ensure its agents' compliance with GTL's policies. Because the same "operative facts" are at issue in the instant litigation, and breach-of-contract actions regarding Platinum's failure to abide by the Marketing Agreement could have been brought along in the Cook County Action, the causes of action are identical. Moreover, the Missouri Action was filed before the Cook County Action was concluded. Because GTL's indemnification claim could have been brought before March 2017 and is pegged to Platinum's alleged breach of contract described in the Cook County complaint, it is considered part of the same transaction for *res judicata* purposes. *Cf. Palka v. City of Chicago*, 662 F.3d 428, 438 (7th Cir. 2011) (explaining that a prior judgment will have preclusive effect even when it is logistically difficult to bring it at the same time as the initial case, and that there are several ways to avoid *res judicata* in those circumstances).

GTL cites federal authority indicating that when *res judicata* is asserted regarding a dismissal pursuant to settlement in a federal case, the settlement agreement dictates its own preclusive effect. [75 at 9.] Assuming *arguendo* that Illinois has adopted that approach, it does GTL no good: The 2017 Settlement Agreement provided that "all claims that were filed or could have been filed in the Cook County litigation shall be deemed to be settled and resolved by this AGREEMENT." [90, ¶ 2.] In other words, the settlement is coterminous with the dismissal—and for the reasons set forth above, GTL cannot bring these claims again.

In sum, *res judicata* provides a second independent basis to grant Platinum's motion for declaratory judgment and dismiss any outstanding claims from the Missouri Action (but this analysis does not affect the breach of settlement agreement claim).[5]

## IV. Conclusion

For the foregoing reasons, Platinum's motion for summary judgment [68] is granted. The Court will enter judgment in favor of Plaintiff Platinum and against Defendant GTL on Counts I and II, as well as on GTL's indemnification and contribution claims from Missouri [see 31].

Dated: November 21, 2019

Robert M. Dow, Jr.
United States District Judge

---

[5] Because the Court has concluded that Platinum is entitled to summary judgment on all counts—some on multiple bases—it need not consider Platinum's collateral estoppel claims.